N. K. PARRISH, INC., Appellant,

v.

Jose A. NAVAR et al., Appellees.

No. 8743.

Court of Civil Appeals of Texas,
Amarillo.

June 20, 1977.

Garner, Vickers, Purdom & Nelson, Robert E. Garner, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Cecil C. Kuhne, Lubbock, for appellees.

ELLIS, Chief Justice.

The plaintiff, N. K. Parrish, Inc., has appealed from the judgment of the trial court sustaining the plea of privilege filed by the defendants, Jose A. Navar, et al. Parrish sought to sustain venue under the provisions of subdivision 5(a) of the venue statute on the basis of purported contracts in writing consisting of certain Confirmations of Sale of grain signed by Parrish, but not signed by the defendants-purchasers. Additionally, Parrish contends that the defendants are not entitled to rely upon subdivision 5(b) as a basis for determining venue under the facts of this case. We have concluded that Parrish failed to establish the existence of a contract in writing within the purview of subdivision 5(a) or other exception which would operate to deny the defendants the right to be tried in the county of their residence. Affirmed.

Parrish sued Navar and other unnamed persons individually and as alleged partners dba, Farmers Dairies. The suit alleged breach of three contractual agreements. On November 13, 14 and 18, 1974, Parrish's agent, Johnny Cox, had telephoned Jose Navar of Farmers Dairies in El Paso, Texas. During each of the three telephone conversations, detailed arrangements were made for Parrish to sell 1,000,000 pounds of # 2 yellow grain sorghum to Farmers Dairies. After each conversation, Cox had a written "Confirmation of Sale" prepared and mailed to the defendant. These instruments consisted of printed forms with the agreed terms typed into appropriate spaces on the forms. On each of the three instruments was also typed: "This Contract is Performable at Lubbock, Texas." Thus, the instruments purported to confirm the sale of 3,000,000 pounds of sorghum to the defendant.

The defendant, however, accepted only 350,780 pounds of the grain. After that amount had been delivered, Jose Navar wrote Parrish and cancelled the contracts. That letter was written on December 4, 1974 and on February 19, 1976, Parrish filed this suit against the defendants for breach of contract.

The defendants interposed a plea of privilege which was controverted pursuant to the provisions of Tex.Rev.Civ.Stat.Ann. art. 1995, subd. 5(a) (Supp.1976). The trial court heard testimony and sustained the defendants' plea of privilege without entering findings of fact and conclusions of law.

In Parrish's first point of error, he has urged that subdivision 5(a) is applicable under the facts of this case.

Subdivision 5(a) of Article 1995 provides:

5. Contract in writing.—(a) Subject to the provisions of Subsection (b), if a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile.

In order for this subdivision to control venue, the plaintiff must prove the following venue facts: (1) the defendant is a party reached by the statute; (2) the plaintiff's claim is based upon a contract in writing;

(3) the contract was entered into by the defendant or one authorized to bind him; and (4) the contract provides for venue by its terms. *Vaquero v. Adcock*, 453 S.W.2d 908 (Tex.Civ.App.—San Antonio 1970, no writ); 1 R. McDonald, Texas Civil Practice in District and County Courts, § 4.11.1 at 444 (1965 ed.). Parrish has argued that the "Confirmation(s) of Sale" are "contracts in writing" which established venue in Lubbock County by calling for performance there. Whether these confirmatory memoranda are "contracts in writing" within the meaning of subdivision 5(a) is the basic question for determination in this appeal. It is undisputed that the confirmations were never signed or executed by the defendants.

We recognize that in the business world, written memoranda confirming prior oral or telephonic agreements are frequently transmitted in business transactions. Many times, these memoranda specify a county for performance and, if litigation develops, the court is called upon to decide whether the memoranda are part of the parties' contract in order to determine whether the asserted venue provision (subd. 5) is applicable.

■ If the parties' prior oral agreement completely settled every material term of the contract, one party may not unilaterally enlarge it later by mailing a confirmatory memorandum containing a venue clause and have the memorandum considered a "contract in writing" within subdivision 5(a). In such cases, the courts have recognized that the real contract between the parties was an oral one and this subdivision 5(a) (or its predecessor, subdivision 5), does not determine venue. *Jenkins v. Silverthorne*, 510 S.W.2d 171 (Tex.Civ.App.—Amarillo 1974, no writ); *West Flour Mill, Inc. v. Vance*, 430 S.W.2d 232 (Tex.Civ.App.—Tyler 1968, writ dism'd); *Trans-South Hydrocarbons Co. v. Trinity Industries*, 419 S.W.2d 662 (Tex.Civ.App.—Dallas 1967, no writ); *Back v. Radio City Distributing Co.*, 286 S.W.2d 672 (Tex.Civ.App.—Dallas 1956, writ dism'd).

On the other hand, if the parties to an oral agreement expressly agreed that it would be finalized with a confirmatory memorandum, the court will give effect to the memorandum as a part of the contract between the parties and allow the designated venue clause to become effective. *Berlowitz v. Standley*, 117 Tex. 362, 5 S.W.2d 963 (1928); *Daugherty Grain Co. v. S. T. Oates Grain Co.*, 191 S.W.2d 804 (Tex.Civ. App.—Fort Worth 1945, no writ); *Gillmore v. Transit Grain & Commission Co.*, 213 S.W.2d 880 (Tex.Civ.App.—Fort Worth 1944, no writ); *Gottlieb v. Dismukes*, 230 S.W. 792 (Tex.Civ.App.—Austin 1921, no writ).

The courts also have recognized confirmatory memoranda as "contracts in writing" where the plaintiff established that the defendant expected a confirmation because of prior dealings or customs and usage of trade. *Green-Gro Seed Company v. Perry*, 399 S.W.2d 898 (Tex.Civ.App.—Amarillo 1966, no writ); *Harrison v. Facade, Inc.*, 355 S.W.2d 543 (Tex.Civ.App.—Dallas 1962, no writ); *Stephenson v. Oates*, 213 S.W.2d 855 (Tex.Civ.App.—Amarillo 1947, no writ); *Vinson v. Horton*, 207 S.W.2d 432 (Tex.Civ. App.—Texarkana 1947, no writ).

Similarly, if the confirmatory memoranda contained new or additional terms in which the other party later acquiesced, the memorandum was given effect. *Lufkin Foundry & Machine Company v. Mixon*, 445 S.W.2d 232 (Tex.Civ.App.—Beaumont 1969, no writ); *Harrison v. Facade, Inc., supra*; *Stevens-Smith Grain Co. v. Heid Bros*, 18 S.W.2d 210 (Tex.Civ.App.—El Paso 1929, writ dism'd).

Also, confirmatory memoranda sent by brokers to their clients which provide that failure to object to the contract immediately by wire or phone shall be regarded as final acceptance have been held to be contracts in writing under subdivision 5. *Talley v. Paul Allison Grain Co.*, 369 S.W.2d 439 (Tex.Civ.App.—Fort Worth 1963, writ dism'd); *Pittman & Harrison Co. v. B. F. Robey & Co.*, 234 S.W. 1114 (Tex.Civ.App.—Dallas 1921, no writ).

In the instant case, Parrish's agent, Cox, orally agreed to sell the defendant grain.

Cox testified that he and Navar discussed each of the contract terms very thoroughly; they agreed upon every material term in the contract. The terms orally agreed upon included quantity of grain, price, grade, shipping terms, weighing terms, payment terms and extra loading charges. There is no evidence that Cox told Navar that he would be sent any confirmatory memoranda; nothing indicates that the matter was ever discussed. It is our opinion that the contract between the parties was made orally over the telephone and that all contract terms were settled at that time. For this reason, Parrish's unilateral "Confirmation of Sale" cannot be considered a subdivision 5(a) "contract in writing." The contract between the parties was made orally and an oral contract will not operate to establish venue under subdivision 5(a). *Teague Brick & Tile Company v. Snowden,* 440 S.W.2d 419 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ).

Parrish, however, has argued that the parties had done business in the past and that the defendant knew the contract would be confirmed in writing when he made the oral agreement. It is recognized that testimony produced at the hearing showed that the parties had had prior dealings in which confirmatory memoranda were sent to the defendant. There is no evidence that the defendant actually understood that the contract would be finalized with confirmatory memoranda; the defendant did not even testify at the hearing. The parties had done business with each other for only about six months. The record does not reflect the number of previous transactions by the parties and it cannot be said that the confirmatory memoranda were a part of the contract as a matter of law. Nor can it be said that the defendant acquiesced in the terms of the confirmatory memoranda. The defendant neither signed nor returned the copies sent him, although instructions on the memoranda requested that he do both. Although the defendant paid for the grain in Lubbock, this payment cannot be considered acquiescence in the "performable in Lubbock" venue clause in the memoranda because the original oral contract called for payment in Lubbock. In fact, all of the defendant's actions were consistent with the original oral contract.

From a review of all the evidence, we do not find that Navar's acts, conduct or alleged acquiescence sufficiently established the confirmations of sales as the terms of their contract or agreement. Under all of these circumstances, we hold that the contracts sued upon were not "contracts in writing" within the meaning of subdivision 5(a). Point one is overruled.

■ In Parrish's second point it is contended that the facts of this case are not within the purview of subdivision 5(b) of Article 1995, which provides:

(b) In an action founded upon a contractual obligation of the defendant to pay money arising out of or based upon a consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household or agricultural use, suit by a creditor upon or by reason of such obligation may be brought against the defendant either in the county in which the defendant in fact signed the contract, or in the county in which the defendant resides at the time of the commencement of the action. No term or statement contained in an obligation described in this subsection shall constitute a waiver of this provision.

Appellant further contends that this case does not involve a "consumer transaction" and that the defendant is not a "consumer" within the meaning of subdivision 5(b). Further, appellant argues that it is not a creditor within the meaning of subdivision 5(b).

In the forepart of this opinion we have held that in the absence of a contract in writing venue cannot be sustained in Lubbock County under the provisions of subdivision 5(a). It is here noted that if subdivision 5(b) has no application to the facts of this case, then it is obvious that the defendants are entitled to have the suit transferred to the county of their residence.

Subdivision 5(b) contains two alternative provisions, i. e., the suit may be brought

against the defendant either in the county where the defendant, in fact, signed the contract or in the county where the defendant resides at the time of the commencement of the action. As previously pointed out, there was no written contract in this case (only an oral contract); the defendant did not sign any contract in Lubbock County or anywhere else. Therefore, the first portion of subdivision 5(b) (dealing with the county in which the defendant signed the contract) has no application to this case. The alternative provision of subdivision 5(b) is that the action must be brought ". . . in the county in which the defendant resides at the time of the commencement of the action." In any event, this is the only viable alternative and it is consistent with the rule establishing venue in the county of the defendants' residence. Thus, it becomes immaterial as to whether there was in this case a consumer transaction.

In the light of the foregoing, we hold that the complaints set out in connection with appellant's second point are immaterial to a determination of venue in this case. We hold that Parrish has established no exception to the general rule which allows a defendant to be tried in the county of his residence.

For the reasons above stated, the judgment of the trial court sustaining the defendants' plea of privilege is affirmed.